# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL NO. 3:11CV246-GCM-DSC

| | |
|---|---|
| KAREN L. THACKER, ) | |
|     Plaintiff, ) | |
| ) | |
| vs. ) | **MEMORANDUM AND RECOMMENDATION** |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social ) | |
| Security Administration, ) | |
|     Defendant. ) | |
| ) | |

**THIS MATTER** is before the Court on Plaintiff's "Motion for Summary Judgment" (document #11) and "Memorandum in Support ..." (document #12), both filed September 29, 2011; and Defendant's "Motion for Summary Judgment" (document #13) and "Memorandum in Support ... (document #13), both filed November 22, 2011. This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), and these Motions are now ripe for disposition.[1]

Having considered the written arguments, administrative record, and applicable authority, the undersigned respectfully recommends that Plaintiff's Motion for Summary Judgment be <u>denied</u>; that Defendant's Motion for Summary Judgment be <u>granted</u>; and that the Commissioner's decision be <u>affirmed</u>.

---

[1] Pursuant to the Pretrial Scheduling Order entered on July 28, 2011, this matter is ripe upon the filing of Defendant's Motion and Memorandum. <u>See</u> Document #10. Plaintiff has not requested oral argument, nor does good reason for allowing oral argument appear in the record. Plaintiff has not sought leave to file a reply brief. <u>See also</u> Proposed Local Civil Rule 7.1 (E) which clarifies that the briefing schedule applicable under Rule 7.1 does not apply to Social Security appeals.

## I. PROCEDURAL HISTORY

On September 26, 2006, Plaintiff filed an application for a period of disability and Social Security benefits, initially alleging she was unable to work as of June 18, 2003, due to arthritis, joint pain, and diabetes. Plaintiff's application was denied initially and on reconsideration. On March 22, 2010, the Appeals Council remanded the matter for a second hearing which was held on August 3, 2010 (Tr. 24-49). Plaintiff amended her alleged onset of disability date to August 30, 2008. (Tr. 231-32).

On December 3, 2010, the Administrative Law Judge ("ALJ") issued a decision finding that Plaintiff was not disabled (Tr. 13-23). Specifically, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her amended alleged onset date of August 30, 2008. The ALJ also found that Plaintiff suffered from carpal tunnel syndrome, joint pain, and obesity, which were severe impairments within the meaning of the regulations, but did not meet or equal any listing in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (Tr. 356-357 at Findings 3 and 8). The ALJ then considered whether Plaintiff could return to her past relevant work. The ALJ found that Plaintiff retained the Residual Functional Capacity ("RFC") to perform light[2] work, except that she was limited to simple, routine, repetitive, and unskilled tasks in a non-production environment (Tr. 17, at Finding 5). The ALJ further found that Plaintiff could occasionally climb, balance, kneel, crouch, and crawl, and frequently but not continuously handle, finger, and feel (Tr. 17, at Finding 5). Based on this RFC,

---

[2]"Light" work is defined in 20 C.F.R. § 404.1567(b) as follows:

> Light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

the ALJ found that Plaintiff was unable to perform her past relevant work (Tr. 18, at Finding 6). The ALJ relied upon the Medical-Vocational Guidelines and the testimony of a Vocational Expert ("V.E.") to conclude that Plaintiff could have performed work existing in the national economy and that she was not disabled within the meaning of the Social Security Act. (Tr. 22, at Finding 10).

By notice dated March 24, 2011, the Appeals Council denied Plaintiff's request for further administrative review.

The Plaintiff filed the present action on May 18, 2011. On appeal, Plaintiff assigns error to the ALJ's alleged failure to resolve "apparent conflicts" between the V.E.'s testimony and the Dictionary of Occupational Titles ("DOT"), the ALJ's determination of Plaintiff's RFC, and the ALJ's analysis of Plaintiff's credibility. See Plaintiff's "Memorandum in Support ..." 1-2 (document #12). The parties' cross motions are ripe for disposition.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The District Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v.

Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986), quoting Richardson v. Perales, 402 U.S. 389, 401 (1971), the Fourth Circuit defined "substantial evidence" thus:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

See also Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays v. Sullivan, 907 F.2d at 1456 (4th Cir. 1990); see also Smith v. Schweiker, 795 F.2d at 345; and Blalock v. Richardson, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome – so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III. DISCUSSION OF CLAIM

The question before the ALJ was whether the Plaintiff became "disabled" as that term of art is defined for Social Security purposes.[3] Plaintiff asserts that the ALJ erred when he did not question the V.E. about any conflict between his testimony and the DOT concerning the functional

---

[3] Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an:
inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . .
 Pass v. Chater, 65 F. 3d 1200, 1203 (4th Cir. 1995).

4

requirements of jobs that he testified Plaintiff could perform. Social Security Ruling 00-4p sets forth standards for the use of vocational experts. The Ruling contains specific provisions regarding conflicts as follows:

> Occupational evidence provided by a vocational expert or VS generally should be consistent with the occupational information supplied by the *DOT*. When there is an <u>apparent unresolved conflict</u> between vocational expert or VS evidence and the *DOT*, the adjudicator must elicit a reasonable explanation for the conflict before relying on the vocational expert or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.

Social Security Ruling 00-4p, *4-5 (emphasis added). The Ruling continues:

> **The Responsibility To Ask About Conflicts**
> When a vocational expert or VS provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that vocational expert or VS evidence and information provided in the *DOT*. In these situations, the adjudicator will:
>
> Ask the vocational expert or VS if the evidence he or she has provided conflicts with information provided in the *DOT*; and
>
> If the vocational expert's or VS's evidence appears to conflict with the *DOT*, the adjudicator will obtain a reasonable explanation for the apparent conflict.
>
> **Explaining the Resolution**
> When vocational evidence provided by a vocational expert or VS is not consistent with information in the *DOT*, the adjudicator must resolve this conflict before relying on the vocational expert or VS evidence to support a determination or decision that the individual is or is not disabled. The adjudicator will explain in the determination or decision how he or she resolved the conflict. The adjudicator must explain the resolution of the conflict irrespective of how the conflict was identified.

Social Security Ruling 00-4p, *8-9.

Contrary to Plaintiff's argument, there was no conflict between the V.E.'s testimony that Plaintiff could perform the jobs of interviews charge clerk, telephone information clerk, and call

out operator, despite a limitation to "simple, routine, repetitive, unskilled tasks," and the DOT's classification of those jobs as having a GED reasoning level three.[4]

At the hearing, the ALJ asked the V.E. whether a hypothetical individual with Plaintiff's vocational characteristics and RFC could perform other work existing in significant numbers in the national economy (Tr. 45-46). The V.E. testified that such an individual could perform the jobs of interviews charge clerk, telephone information clerk, and call out operator, despite an RFC limitation to "simple, routine, repetitive, unskilled" work (Tr. 17). Courts in the Fourth, Fifth, Seventh, Eighth, Ninth, Tenth, and Eleventh Circuits have recently held that there is no conflict between a job classified at reasoning level three and a limitation to simple, routine, unskilled work. See, e.g., Terry v. Astrue, 580 F.3d 471, 478 (7th Cir. 2009) (holding there is no conflict between jobs classified at reasoning level three and a limitation to "simple, unskilled work"); Hurtado v. Astrue, No. 09-60930, 2010 WL 1850261, at *11 (S.D. Fla. Apr. 14, 2010) (holding there is no conflict between mail clerk job classified at reasoning level three and limitation to "simple routine tasks," and noting that "[m]ost courts which have addressed this issue have held that the requirement of Reasoning Level 2 or 3 is not inconsistent with the ability to perform only simple tasks, and thus no conflict existed between the VE's job descriptions and the DOT"); Cottman v. Astrue, No. BPG-08-1753, 2009 WL 4884506, at *6 n.5 (D. Md. Dec. 9, 2009) ("The ALJ's determination that plaintiff could only perform simple tasks, however, is not necessarily inconsistent with a finding that plaintiff can perform the job of surveillance systems monitor");

---

1. GED "embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance. This is education of a general nature which does not have a recognized, fairly specific occupational objective. Ordinarily, such education is obtained in elementary school, high school, or college. However, it may be obtained from experience and self-study." *DOT* at 1009, 1012. A GED of reasoning level three means "Apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." *DOT* at 1011.

Webb v. Astrue, No. 4:08-CV-747-Y, 2010 WL 1644898, at *12 n.10 (N.D. Tex. Mar. 2, 2010) ("A job as a city bus driver that requires a [GED reasoning level] of three is not necessarily inconsistent with an RFC that includes only the ability to perform simple, routine work tasks"); Robinson v. Astrue, No. 4:08CV1980MLM, 2010 WL 481045, at *18 (E.D. Mo. Feb 4, 2010) ("reasoning level three is consistent with limitations to simple, repetitive and routine tasks"); Blanchard v. Astrue, No. 09-1143-SAC, 2010 WL 2925180, at *11-12 (D. Kan. July 21, 2010) (affirming the Commissioner's decision that claimant could perform the surveillance system monitor job despite a limitation to "simple, routine, repetitive work that is as stress free as possible"); Koontz v. Astrue, No. 08-2153-LAB (WVG), 2010 WL 3339388, at *8-9 (S.D. Cal. July 26, 2010) ("there is no conflict between simple repetitive work and reasoning levels of 2 and 3").

The requirements of GED reasoning level three are consistent with a limitation to simple, unskilled work. Jobs classified at reasoning level three require the worker to "[a]pply commonsense understanding to carry out instructions . . . ." DOT at 1009-1012.[5] Thus, reasoning level three is very similar to reasoning levels one and two. Plaintiff concedes that this Court has

---

[5] Level 6: Apply principles of logical or scientific thinking to a wide range of intellectual and practical problems. Deal with nonverbal symbolism (formulas, scientific equations, graphs, musical notes, etc.) in its most difficult phases. Deal with a variety of abstract and concrete variables. Apprehend the most abstruse classes of concepts.
Level 5: Apply principles of logical or scientific thinking to define problems, collect data, establish facts, and draw valid conclusions. Interpret an extensive variety of technical reasoning.
Level 4: Apply principles of rational systems to solve practical problems and deal with a variety of concrete variables in situations where only limited standardization exists. Interpret a variety of instructions furnished in written, oral, diagrammatic, or schedule form. (Examples of rational systems include: bookkeeping, internal combustion engines, electric wiring systems, house building, farm management, and navigation).
Level 3: Apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or
from standardized situations.
Level 2: Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized
situations.
Level 1: Apply commonsense understanding to carry out simple one or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations
encountered on the job. *DOT* at 1010-1011.

found levels one and two to be consistent with a limitation to simple, routine, repetitive tasks (P. Br. at 17). Levels one, two and three all require the worker only to "[a]pply commonsense understanding to carry out . . . instructions." DOT at 1009-1012. In contrast, levels four, five and six are more complex, requiring the worker to "[a]pply principles" to problems. Id. Jobs classified at reasoning levels one, two and three are consistent with a limitation to simple, unskilled work.

Plaintiff cites Hackett v. Barnhart, 295 F.3d 1168, 1176 (10th Cir. 2005) in support of her argument that there is an inconsistency between a limitation to simple, unskilled work and a job classified as reasoning level three by the DOT (Document #12 at 17). Unlike Hackett, the ALJ in the instant case asked the V.E. whether his testimony conflicted with the DOT, and the V.E. responded that it did not (Tr. 46). During the hearing, neither Plaintiff nor her counsel identified any "apparent" inconsistency between the V.E.'s testimony and the DOT. See Manley v. Barnhart, No. 04-3617, 2005 WL 3076879, at **5 (7th Cir. Nov. 17, 2005) (plaintiff waived argument that ALJ impermissibly failed to inquire about vocational expert conflicts with the *DOT* where plaintiff did not challenge the vocational expert on this point during cross examination).

There was no apparent conflict between the ALJ's RFC limitation to simple, routine, repetitive, unskilled work and the reasoning level three jobs identified by the V.E. Thus, there is no basis for overturning the ALJ's decision that Plaintiff could perform the positions of interviews charge clerk, telephone information clerk, and call out operator despite her limitation to "simple, routine, repetitive, unskilled" work.

Plaintiff next challenges the ALJ's determination that she could perform light work. Specifically, Plaintiff complains that no RFC assessment was performed by a physician on or after her amended disability date of August 30, 2008. (Document #12 at 1). To the contrary, the record contains substantial evidence supporting the ALJ's RFC finding and it should be affirmed.

The evidence relating to Plaintiff's back, hip, and joint pain does not reflect limitations beyond those found by the ALJ. One month before her alleged onset date, Plaintiff was evaluated by Arthritis & Osteoporosis Consultants of the Carolinas. (Tr. 815-818). Her osteoarthritis and inflammatory arthritis were described as "mild" with no inflammation (Tr. 815-818). Her arthritis did not require addressive or immunisuppressive therapy. (Tr. 20, 815, 818). She reported foot and knee pain with prolonged standing, but no discoloration, numbness, or swelling of the joints in the lower or upper extremity. (Tr. 818).

On January 15, 2009, Plaintiff presented to Gaston Foot and Ankle Associates with lower extremity pain. (Tr. 829-830). She had a normal gait, 5/5 muscle strength, and normal muscle tone. (Tr. 16, 829, 830). Her neurological examination was unremarkable, she had good coordination, and normal sensation. (Tr. 16, 829-830).

On July 6, 2009, Plaintiff was seen by Jessica Lauber, a physician's assistant, for left hip pain. (Tr. 954-955). X-rays and an MRI of her left hip were "basically benign" (Tr. 954). Plaintiff had insertional tendinitis and early degenerative arthrosis but an otherwise negative exam. (Tr. 19, 954).

On July 20, 2009, Plaintiff underwent a lumbosacral MRI which revealed "mild" degenerative disk desiccation and minimal degenerative disk bulging. (Tr. 990). There was "no frank disk protrusion or herniation at any level" and "no gross neurologic structure compromise at any level." (Tr. 990).

On September 9, 2009, Plaintiff was evaluated by Dr. Alexander Chasnis for hip and thigh pain. (Tr. 989-990). She had a negative bilateral lower extremity neurological examination. (Tr. 990). She was appeared well and was in no distress. (Tr. 989). She had a negative straight leg raise, 5/5 strength throughout all major muscle groups, good range of motion in her hip, normal

reflexes, and a non-antalgic gait. (Tr. 989).

On September 16, 2009, Plaintiff reported "mild" pain on extremes of motion. (Tr. 19, 991). She was neurologically intact and had "negative stretch signs." (Tr. 991). On February 8, 2010, Plaintiff demonstrated reasonable range of motion for lumbosacral flexion, extension, and bilateral side bending. (Tr. 19, 992). She was neurovascularly intact and x-rays showed normal hip range of motion. (Tr. 19, 992). Her strength, reflexes, and neurovacular exams were normal. (Tr. 19, 992). X-rays of Plaintiff's hip were also unremarkable. (Tr. 19, 992).

In March 2010, Plaintiff underwent a steroid injection for her back pain. (Tr. 996-997). Upon follow-up, Plaintiff admitted that her buttock pain had notably improved. (Tr. 19, 999).

The medical evidence relating to Plaintiff's carpal tunnel syndrome and upper extremity pain similarly fails to suggest limitations beyond light work. In April 2008, Plaintiff underwent decompression surgery on her right elbow and wrist without complication. (Tr. 766, 791). The medical reports following her surgery reflect that her condition steadily progressed without complication. (Tr. 767, 783-785). On April 24, 2008, Plaintiff reported that her symptoms were relieved, she was pleased with her recovery, and was progressing to a full range of activity. (Tr. 799).

The ALJ acknowledged Plaintiff's February 2009 obesity diagnosis and accounted for it in his RFC determination. (Tr. 20, 1001). The ALJ precluded Plaintiff from work involving strenuous lifting due to the effect her obesity may have had on her intermittent back and extremity pain. (Tr. 20). The evidentiary record is consistent with an RFC for light work and does not reflect limitations beyond those found by the ALJ.

Neither the Commissioner's regulations nor applicable case law require the ALJ to obtain medical expert testimony or evaluation concerning a plaintiff's RFC. The RFC finding is an

administrative determination reserved to the ALJ concerning the most a plaintiff can do despite her impairments. 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2). As explained in Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 144 (1st Cir. 1987), "the basic idea which the claimant hawks-the notion that there must always be some super-evaluator, a single physician who gives the fact finder an overview of the entire case-is unsupported by the statutory scheme, or by the case law, or by common sense, for that matter." Rather, the ALJ is entitled "to piece together the relevant medical facts from the findings and opinions of multiple physicians." Id. Here, the ALJ relied upon the state agency assessment that existed in the record (Tr. 741), as well as Plaintiff's testimony and underlying treatment notes, to determine that she could perform light work. (Tr. 17-20). The fact that the state agency physician did not have access to the entire evidentiary record - because the record was incomplete a the time of the assessment - is inconsequential as the ALJ considered the entire evidentiary record and substantial evidence supports his determination. (Tr. 18-20). Moreover, there is nothing in the additional medical evidence subsequently submitted by Plaintiff to indicate that she possessed limitations beyond light work.

Plaintiff also argues that the ALJ had an obligation to order a consultative examination or re-contact her treating sources to obtain an updated RFC assessment (Tr. 18-20). Plaintiff is mistaken. It is Plaintiff's burden, not the Commissioner's burden, to prove RFC. 20 C.F.R. § 404.1512(c), 416.912(c). Where, as here, the evidence of record was sufficient for the ALJ to determine that Plaintiff could perform light work (Tr. 741), he had no obligation to re-contact Plaintiff's treating sources or obtain an additional RFC assessment. 20 C.F.R. §§ 404.1512(e), 404.1527(c)(3); 416.912(e), 416.927(c)(3).

Finally, Plaintiff argues that the ALJ's assessment of her credibility is not supported by substantial evidence. The determination of whether a person is disabled by nonexertional pain or

other symptoms is a two-step process. "First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996), citing 20 C.F.R. § 416.929(b); and § 404.1529(b); 42 U.S.C. § 423(d)(5)(A). If there is such evidence, then the ALJ must evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects [his] ability to work." Id. at 595, citing 20 C.F.R. § 416.929(c)(1); and § 404.1529(c)(1). The regulations provide that this evaluation must take into account:

> not only the claimant's statements about his or her pain, but also "all the available evidence," including the claimant's medical history, medical signs, and laboratory findings; any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.); and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.

Craig, 76 F.3d at 595 (citations omitted).

The record contains evidence of Plaintiff's carpal tunnel syndrome, joint pain, and obesity – which could be expected to produce some of the pain claimed by Plaintiff. Accordingly, the ALJ found Plaintiff to have met the first prong of the test. The ALJ then determined that Plaintiff's subjective complaints were not fully credible, as they were not consistent with the objective evidence in the record.

The ALJ provided several justifications for discounting Plaintiff's subjective complaints. In accordance with SSR 96-7p, the ALJ considered the inconsistency between Plaintiff's alleged symptoms and the objective medical evidence of record. The ALJ noted that despite Plaintiff's report that she had something "growing in her thigh," the medical evidence failed to support such a claim. (Tr. 18). In fact, Dr. Chasnis did "not have a good explanation for a lot of [Plaintiff's]

symptoms" and could not feel a lump in her thigh. (Tr. 990). Plaintiff's diagnostic imaging also failed to reveal a lump in her thigh (Tr. 990). The ALJ properly considered the inconsistency between Plaintiff's symptoms and the objective evidence to discredit her complaints. The ALJ also noted that despite Plaintiff's claim of disabling back pain, she had an "unremarkable lumbosacral spine MRI without any gross neurological structure compromise." (Tr. 990). Dr. Chasnis stated that he was "overall underwhelmed with her lumbosacral spine MRI" and found her "abnormalities [to be] very subtle." (Tr. 990).

Moreover, although Plaintiff alleged numbness secondary to carpal tunnel syndrome, she underwent decompression surgery on her right elbow and wrist without complication in April 2008. (Tr. 799). Plaintiff's treatment notes demonstrate that she recovered well and was able to return to her full range of activity (Tr. 19, 799). A symptom that can be reasonably controlled with treatment is not disabling. Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986).

The ALJ also considered Plaintiff's activities of daily living in assessing the credibility of her mental and physical complaints. The ALJ noted that Plaintiff lived alone, cared for her personal needs, drove a car, paid bills, grocery shopped, attended church, socialized with her friend four or five times per month, and called her friend to talk on the phone every day. (Tr. 19). The ALJ found such activities to be inconsistent with the severity of her mental and physical limitations as alleged (Tr. 19). See Johnson v. Barnhart, 434 F.3d 650, 658 (4th Cir. 2005) (holding that a claimant's daily activities, such as performing home exercises, taking care of the family pets, cooking, and doing laundry, were inconsistent with the claimant's complaints of excruciating pain and inability to perform basic physical and mental work abilities).

Although the medical records establish that the Plaintiff experienced pain and mental and emotional difficulties to some extent, as the Fourth Circuit has noted, it is the ALJ's responsibility,

not the Court's, "to reconcile inconsistencies in the medical evidence." Seacrist, 538 F.2d at 1056-57.

Simply put, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." Mickles v. Shalala, 29 F.3d 918, 923 (4th Cir. 1994)(citing Simmons v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987)). This is precisely such a case, as it contains substantial evidence to support the ALJ's treatment of the record and the hearing testimony, and his ultimate determination that the Plaintiff was not disabled.

## IV. RECOMMENDATIONS

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that Plaintiff's "Motion for Summary Judgment" (document #11) be **DENIED;** that Defendant's "Motion for Summary Judgment" (document #13) be **GRANTED**; and that the Commissioner's determination be **AFFIRMED.**

## V. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen (14) days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d

at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; and to the Honorable Graham C. Mullen.

**SO RECOMMENDED AND ORDERED**.

Signed: November 28, 2011

David S. Cayer
United States Magistrate Judge